**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 15, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-40362
_____


In The Matter Of: JOE ALVIN ANDREWS, SR,

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE CADLE COMPANY; CADLEWAY PROPERTIES, Inc., Assignee of the
Cadle Company,

Appellants,

versus

JOE ALVIN ANDREWS, SR.,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(98-CV-53)
_____


Before DeMOSS, DENNIS, and PRADO, Circuit Judges.


DENNIS, Circuit Judge:[*]

    Plaintiffs-Appellants, the Cadle Company, et al. ("Cadle"),

appeals the district court's affirmance of the bankruptcy court's

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

discharge of debts that Defendant-Appellee, Joe Alvin Andrews, Sr. ("Andrews") owed Cadle.

Each of Cadle's arguments challenges a different factual finding made by the bankruptcy court, which we can only overturn if Cadle proves that they are clearly erroneous. Because the bankruptcy court's factual findings relating to Andrews' discharge were not clearly erroneous, we AFFIRM the district court's affirmance of the bankruptcy court.

## I. BACKGROUND

In the mid-1960s, Andrews (now deceased) obtained royalty and development rights from the restaurant chain Whataburger, Inc. ("Whataburger") to develop Whataburger franchises in Bexar County, Texas. Andrews, to facilitate this development, incorporated Whataburger of Alice ("WOAI") in 1968 with his wife Louise Andrews. Andrews and Louise Andrews were the sole shareholders of WOAI. Over the course of the next few decades, in a series of transactions ending in 1987, Andrews transferred all of the royalty and development rights that Whataburger granted to him to WOAI in exchange for an employment agreement and other consideration from WOAI.

In the 1980's and early 1990's Andrews' physical and mental condition began to deteriorate. He also became involved in several ill-conceived, high-risk investments that began to deplete his

2

assets.  Mrs. Andrews became increasingly concerned about her husband's investments and, in 1984, entered into a separation agreement with Andrews to divide the community property between them to protect her interests.  This agreement—along with transfers of stock to his children—reduced Andrews' shares in WOAI to 15,000.

One of Andrews' questionable financial decisions involved a loan from Laredo National Bank (LNB) to purchase a ranch in 1985. Andrews defaulted on the loan in 1989.  LNB was awarded a judgment against Andrews of over $1.2 million.  Execution of the judgment was withheld upon an agreement that Andrews would pay LNB $6,607 per month.  This agreement was secured by the pledge of Andrews' 15,000 shares of WOAI stock.  This arrangement caused a potential problem for WOAI and the Andrews family because a franchise agreement between WOAI and Whataburger required that no WOAI stock could be held by an third party unapproved by Whataburger.  In order to solve this problem, WOAI bought the LNB judgment against Andrews and foreclosed on Andrews' stock.  As a result of the foreclosure, WOAI obtained all of Andrews' remaining shares in WOAI.

WOAI and Whataburger later became involved in litigation which led to a 1990 settlement agreement in which Whataburger bought twenty-eight Whataburger stores from WOAI in exchange for $16 million paid to WOAI. As part of this settlement agreement Andrews signed a release of any claims that he had against Whataburger and

3

consented to the transfer to Whataburger of "all of the right, title and interest to any real or personal property used or useful in business operations." Andrews personally received no consideration in exchange for signing this release.

By the mid 1990s Andrews' investment losses had escalated, and he filed for Chapter 7 bankruptcy, claiming a negative net worth in excess of $14 million.

Cadle became a creditor of Andrews prior to his bankruptcy when it purchased a judgment against him held by Windsor Savings in the amount of approximately one million dollars. After Andrews filed for bankruptcy, Cadle began adversary proceedings in the bankruptcy court, objecting to the discharge based on the bars to the discharge provided by 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5). The bankruptcy court denied Cadle's objections and entered a discharge, which was affirmed by the district court. Cadle now appeals that decision to this court.

## II. ANALYSIS

### A. Standard of Review

"On appeal from a judgment in bankruptcy, findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Monnig's Department Stores, Inc.*, 929 F.2d 197, 200 (5th Cir. 1991) (internal citations

and quotations omitted).  The bankruptcy court's conclusions of law, however, are reviewed *de novo*.  *Id.* at 201.  In addition, when the bankruptcy court's findings of fact are based on determinations regarding the credibility of witnesses, they should be awarded even greater deference.  *See Matter of Webb*, 954 F.2d 1102, 1106 (5th Cir. 1992).  Finally, this court has recognized that courts must grant a debtor a discharge in bankruptcy unless they find a specific, statutory reason not to grant the discharge. *Shelby v. Texas Improvement Loan Co.*, 280 F.2d 349, 355 (5th Cir. 1960)("A bankrupt[cy petitioner] is not to be denied a discharge on general equitable considerations. It can only be denied if one or more of the statutory grounds of objection are proved.").  Accordingly, unless 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A), or 727(a)(5) operate to bar Andrews' discharge, we must affirm it.

## B. 11 U.S.C. § 727(a)(2)(A)—Transfers with Intent to Defraud

The bankruptcy court shall not grant a debtor a discharge if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, . . . , or has permitted to be transferred . . . –property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) (internal numbering consolidated).

A party challenging a discharge under § 727(a)(2)(A) must prove that there was "(1) a transfer of property; (2) belonging to

5

the debtor; (3) within one year of the filing of the petition; (4) with actual intent to hinder, delay or defraud a creditor." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (citing *Pavy v. Chastanat*, 873 F.2d 89, 90 (5th Cir. 1989)). The bankruptcy court's determination that a debtor did or did not have the requisite intent is a factual finding. *Id.*

Cadle argues that Andrews owned five "substantial assets" that he transferred within one year prior to his bankruptcy petition in violation of § 727(a)(2)(A).[1] However, for each of these five transfers, the bankruptcy court found that section 727(a)(2)(A) did not bar Andrews' discharge because he lacked the requisite intent to hinder, delay, or defraud a creditor in making the transfers.

The bankruptcy court's findings were not clearly erroneous. First, the bankruptcy judge considered evidence that Andrews' mental and physical condition at the time of the transfers had severely deteriorated. The bankruptcy court, relying on testimony by Andrews' family members concerning the circumstances surrounding the transfers, found that each them were made, not to defraud creditors, but out of the family's concern for Andrews' physical

---

[1]Specifically, Cadel states that Andrews improperly transferred (a) exclusive rights to develop Whataburger franchise locations; (b) certain royalty rights (c) ownership of 15,000 shares of stock and rights in WOAI; (d) collaterally related rights to receive dividends, bonuses, and rights of control through his position as officer and/or director of WOAI; and (e) personal litigation claims against Whataburger.

and mental health and his ability to properly handle the assets.[2]

Cadle contends that the bankruptcy court improperly allowed its observations of Andrews' physical and mental condition at trial to color its findings with respect to Andrews' mental state at the time of the transfers. However, the bankruptcy court's determination was based, in large part, on testimony by witnesses who observed and worked closely with Andrews at the time of the transfers. In deference to the bankruptcy court's findings of facts based upon its assessment of the witnesses' credibility, we cannot say that the findings were clearly erroneous. Accordingly, section 727(a)(2)(A) does not bar Andrews' discharge.

## C. 11 U.S.C. § 727(a)(4)(A)—Making a False Oath or Account

The bankruptcy court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The party challenging the discharge has the burden of proving that "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Sholdra v.*

---

[2]While the witnesses testifying about Andrews' mental state had an obvious interest in the outcome of the case, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Monnig's*, 929 F.2d at 200-01.

7

*Chilmark Fin., L.L.P.,* 249 F.3d 380, 382 (5th Cir. 2001) (internal citations omitted). The bankruptcy court's determination that a debtor has or has not made a false statement pursuant to § 727(a)(4)(A) is a factual finding. *Keeney v. Smith*, 227 F.3d 679, 685 (6th Cir. 2000) (citing *Williamson v. Firemen's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)); *cf. Robertson*, 330 F.3d at 701 (involving § 727(a)(2)(A)).

Cadle claims that Andrews knowingly and fraudulently made twelve false statements in connection with the case in violation of 11 U.S.C. § 727(a)(4)(A). Cadle argues again that the bankruptcy court improperly based its findings to the contrary on Andrews' mental state at the time of trial rather than at the time that the statements were made. Consequently, Cadle concludes, the factual findings were "contrary to the greater weight of the evidence."

However, for the same reasons that Cadle's first argument was rejected, we conclude that the bankruptcy court did not commit clear error in finding that Andrews did not knowingly and fraudulently make false statements in connection with this case. The bankruptcy court heard testimony as to Andrews' diminished mental capacity by three witnesses—Bill York, Andrews' business manager, Garvin Stryker, Andrews' bankruptcy counsel, and Mrs. Andrews—who worked closely with Andrews at the time he made the statements at issue. Relying on the substance of the witnesses' testimony and its assessments of their credibility, the bankruptcy

8

court found that the alleged statements "were incorrect, but they were not knowingly and fraudulently made as making a false oath."

### D. 11 U.S.C. § 727(a)(5)–Unexplained Losses of Assets

A court shall not discharge a debtor if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The bankruptcy court's determination that a debtor has or has not satisfactorily explained a loss of assets is a factual finding. *See In re Hawley*, 51 F.3d 246, 248 (11th Cir. 1995).

Cadle argues that Andrews made three unsatisfactorily explained transfers of assets which should operate to bar his discharge under § 727(a)(5): (1) The release of his claims in the Whataburger litigation for no consideration; (2) the loss of his rights to a "bonus distribution" in 1993; and (3) the transfer of and foreclosure on Andrews' 15,000 shares of WOAI stock.

### 1. Claim 1: The release of Andrews' claims in the Whataburger litigation.

The bankruptcy court found that Andrews did not have any rights to transfer at the time of the settlement with Whataburger. Specifically, it found that Andrews had transferred all of his rights and potential claims involving Whataburger to WOAI in various transactions years before the settlement agreement.

9

Therefore, the "release" of Andrews' claims against Whataburger was in the nature of a quitclaim deed—the parties to the release believed that Andrews did not have any claims against Whataburger that he had not transferred to WOAI at some point in the past; however, due to the complex nature of the transactions between WOAI and Andrews over the years, the parties "covered their bases" by having Andrews release whatever claims he may have against Whataburger as part of the settlement.

This finding is supported by the record. Joe Andrews, Jr. (Andrews' son) testified that "any rights that [his father] had and the exclusivity or territorial rights along with any franchise rights were conveyed to [WOAI] back in 1986." The bankruptcy court's finding that Andrews' release of his claims against Whataburger did not constitute a "loss of assets," because those claims had already been transferred, is supported by evidence in the record and is not clearly erroneous.

2. Claim 2: Andrew's loss of a "bonus distribution" in 1993.

Cadle next claims that in December 1993, all WOAI shareholders received a bonus distribution except for Andrews. It contends that the bankruptcy court clearly erred in finding that the explanation for the loss of the bonus was satisfactory. Specifically, it contends that the explanation provided was "totally inadequate" because Andrews was the "founding father" of WOAI and therefore

10

deserved a bonus.

However, at trial Joe Andrews, Jr., who the bankruptcy court found "very, very credible," testified that "Andrews did not receive a bonus because it would not look good to the creditors or anything [sic] else if we were awarding him a bonus and he had already cost us money in the past."[3]  Therefore, the evidence is sufficient to support the bankruptcy court's finding that there was a satisfactory explanation for Andrews' lack of a 1993 bonus.  The bankruptcy court did not clearly err in relying on this evidence.

### 3. Claim 3: The foreclosure on Andrews' WOAI stock.

Finally, Cadle contends that the bankruptcy court clearly erred in finding that the circumstances involved in WOAI's foreclosure on Andrews' 15,000 shares of WOAI stock as a result of the LNB transaction were a satisfactory explanation for why Andrews lost the stock.  We disagree.

The bankruptcy court found that WOAI purchased the LNB judgment in order to prevent the WOAI stock from going to an unapproved third party in violation of WOAI's franchise agreement with Whataburger.  The bankruptcy court found that this transaction was "a very logical one that—we're quite used to seeing."  The bankruptcy court also found that, because Andrews had already

---

[3] This statement referred to the money that Andrews was losing due to his speculative investments and bad business decisions made as a result of Andrews' deteriorating mental condition.

11

defaulted on his loan payments to LNB, that the foreclosure on his 15,000 shares by WOAI was not a transfer because it "was no different than a foreclosure by LNB." In short, the bankruptcy court found that WOAI's foreclosure on Andrews' 15,000 shares was not a "transfer" and, if it were a transfer, that Andrews provided a satisfactory explanation for it. This finding was based on evidence in the record and is not clearly erroneous.

The bankruptcy court did not clearly err in finding that the three transfers of assets about which Cadle complains were satisfactorily explained. Accordingly, it did not err in holding that Section 727(a)(5) does not bar Andrews' discharge.


## III. CONCLUSION

Cadle claims that Andrews' bankruptcy discharge should have been barred by 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A) and 727(a)(5). However, the bankruptcy court's factual findings were not clearly erroneous. Therefore, we affirm the district court decision affirming this discharge.

AFFIRMED

12