IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-40450

In The Matter Of: ANTHONY FRANCIS ORSINI; REBECCA LYNN ORSINI

Debtors

THE CADLE COMPANY

Appellant

v.

ANTHONY FRANCIS ORSINI; REBECCA LYNN ORSINI

Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CV-203

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

PER CURIAM:[*]

The Cadle Company appeals the bankruptcy and district courts' decisions holding that discharge and dischargeability of their debts should not be denied under 11 U.S.C. §§ 523(a)(2)(B), 727(a)(3), or 727(a)(5). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

In 1999, Anthony and Rebecca Orsini formed Orsini Family, Inc. for the purpose of acquiring a high-end gift shop named Foxglove and an associated restaurant, which the Orsinis renamed Foxglove Dining (collectively, "Foxglove"). Later that year, the Orsinis, through Orsini Family, Inc., applied to Transamerica Small Business Capital ("TSBC") for a $300,000.00 loan. Because the Orsini's were required to personally guarantee the loan, Rebecca met with a TSBC employee to provide information about the couple's financial condition. The TSBC employee posed questions to Rebecca during a face-to-face interview and recorded her answers in a computer-generated document entitled "Personal Financial Statement Dated December 13, 1999" ("the December 1999 statement"). Neither Rebecca nor Anthony signed or reviewed the December 1999 statement after it was prepared, but Rebecca conceded at trial that it accurately reflects the answers she gave during the interview. The December 1999 statement lists the following assets:

(i) Cash & Marketable Securities $75,000.00

(ii) Retirement Assets $260,000.00

(iii) Life Insurance $10,000.00

(iv) Real Estate $250,000.00

(v) Autos & Other Personal Assets $30,000.00

After evaluating the December 1999 statement, TSBC sent a Conditional Commitment Letter to the Orsinis, notifying them that Orsini Family, Inc. had been approved for a $300,000.00 loan, provided that (a) the Small Business Administration ("SBA") approve and guarantee 75 percent of the loan, (b) the Orsinis make a cash injection of $66,000.00 into the business, and (c) the Orsinis reconcile certain aspects of their December 1999 statement. In response, the Orsinis completed and submitted a Personal Financial Statement ("the March 2000 statement"), which lists the following assets:

(i) Cash on Hand and in Banks $25,000.00

(ii) IRA or Other Retirement Accounts $300,000.00

(iii) Life Insurance $10,000.00

(iv) Stocks and Bonds $85,000.00

(v) Real Estate $250,000.00

(vi) Automobile $20,000.00

(vii) Other Personal Property $20,000.00

(viii) Other Assets $20,000.00

Following the submission of the March 2000 statement, the Orsinis' guaranties were accepted, and the loan closed in July 2000. Despite the assistance of the loan, Foxglove was not profitable. The business closed in February 2002, and Orsini Family, Inc. defaulted on the loan. After the Orsinis failed to fulfill their guarantee, Cadle purchased the loan from TSBC for pennies on the dollar.

On October 23, 2002, Orsini Family, Inc. and the Orsinis, as individuals, filed voluntary petitions under Chapter 7 of the United States Bankruptcy Code. The Orsinis' personal bankruptcy schedule lists the following relevant assets:

(i) Homestead $200,000.00

(ii) Retirement $40,542.42

(iii) Stamps $125.00

(iv) Coins $325.00

(v) Jewelry $75.00

Cadle appeared at the meeting of creditors and requested production of all documents relevant to the Orsinis' financial transactions over the five-year period preceding their bankruptcy. The Orsinis initially furnished three boxes of documents, and later provided more in response to specific requests. Cadle, however, was dissatisfied with what it deemed to be an inadequate record from which to form a clear picture of the Orsinis' financial activities. On February 14,

2003, Cadle filed an adversary proceeding under 11 U.S.C. §§ 523(a)(2)(B), 727(a)(3), and 727(a)(5), objecting to the discharge of the Orsinis' personal guarantee of the loan and their bankruptcy discharge. After a trial, the bankruptcy judge issued a Memorandum Opinion overruling Cadle's objections to discharge. The district court affirmed. Both courts wrote lengthy, carefully reasoned opinions. Cadle now appeals to this court.

## II. DISCUSSION

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Gen. Elec. Capital Corp. v. Acosta (In re Acosta), 406 F.3d 367, 372 (5th Cir. 2005). "Under a clear error standard, this court will reverse 'only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made.'" Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 533 (5th Cir. 2003) (quoting Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 565 (5th Cir. 1995)).

## A. Fraudulently Inflated Financial Statements

Citing 11 U.S.C. § 523(a)(2)(B), Cadle argues that the Orsinis' guarantee is not dischargeable in bankruptcy because the Orsinis obtained the loan by intentionally making materially false statements in both the December 1999 and March 2000 statements. Specifically, Cadle asserts that the Orsinis misrepresented the value of (a) their cash on hand, (b) their personal property, which consisted of stamps, coins, and jewelry, and (c) their residence.[1] Section 523(a)(2)(B) provides that a debt is excepted from discharge if it is obtained by (i) use of a statement in writing; (ii) that is materially false; (iii) respecting the debtor's or an insider's financial condition; (iv) on which the creditor to whom the debtor is liable for such credit reasonably relied; and (v) that the debtor caused

---

[1] In its brief to this court, Cadle also suggests that the Orsinis falsely inflated the value of their retirement accounts and securities. Because Cadle specifically abandoned this contention as it relates to the § 523(a)(2)(B) claim during the hearing before the bankruptcy court, we do not address it.

to be made or published with the intent to deceive. 11 U.S.C. § 523(a)(2)(B). A plaintiff must establish each of these elements by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991).

In this case, the bankruptcy court found that the December 1999 statement was not "in writing," and that Cadle had failed to establish that the March 2000 statement satisfied several of the other elements of § 523(a)(2)(B). We discuss first the court's analysis of the 2000 statement, and then turn to the 1999 statement.

i.

The bankruptcy court found, inter alia, that the Orsinis lacked any intent to deceive in stating the value of their cash, other personal property, and residence on the March 2000 statement. On appeal, Cadle concedes that there is no explicit evidence of an intent to deceive, but argues that the bankruptcy court should have inferred such an intent from the Orsinis' actions. Intent to deceive under § 523(a)(2)(B) can be inferred from the totality of the circumstances surrounding the debtor's acts, including the debtor's knowledge of or reckless disregard for the accuracy of his financial statements. See Norris v. First Nat'l Bank (In re Norris), 70 F.3d 27, 30 n.12 (5th Cir. 1995) (citing Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994)).

Although the evidence in this case might support an inference of an intent to deceive, it does not compel such a finding. See Acosta, 406 F.3d at 374. The bankruptcy court heard and credited the testimony of both Rebecca and Anthony Orsini regarding the valuations of the cash, other personal property, and residence. Rebecca testified that "if I made that statement [regarding the March 2000 report], then . . . we must have had [that] cash on hand in banks or in our Fidelity [account]." With respect to the other personal property, including the stamps, coins, and jewelry, the bankruptcy court found that neither of the Orsinis had any expertise in valuing these types of assets. The court found that

Rebecca estimated the value of the stamps in good faith, by taking into account the large number in the collection and her ability to package the stamps as art to sell in the gift shop. As to the house, the Orsinis testified that they estimated the value at $250,000 because Rebecca had seen a comparable home in the neighborhood listed for this price. Although the house appraised for $200,000 at the time they filed for bankruptcy, the court credited the Orsinis' testimony that their residence declined in value after they prepared the statements because several billboards were erected in view of the home, a dump opened near the home, and they did not perform maintenance or repairs on the home.

Having reviewed the record, we find it plausible that the Orsinis' financial estimates, though perhaps careless or overoptimistic, were made without dishonest intent. See Miller, 39 F.3d at 305-06. The bankruptcy court did not clearly err in finding that the Orsinis lacked the requisite intent to deceive. Because Cadle must prove all elements to sustain its claim of non-dischargeability under § 523(a)(2)(B), we need not address the bankruptcy court's analysis of the other elements.

ii.

Cadle also challenges the bankruptcy court's finding that the December 1999 statement was not "in writing." For purposes of this appeal, it is unnecessary to reach this question. Because all of the misrepresentations the Orsinis allegedly made in applying for the loan appeared in the March 2000 statement, the bankruptcy court considered them. As explained, the court found that the alleged misrepresentations failed to satisfy the other elements of § 523(a)(2)(B), and we have affirmed the court's finding that the Orsinis lacked an intent to deceive.

Cadle argues that we must nevertheless consider the bankruptcy court's finding that the December 1999 statement did not constitute a writing because it affected the court's analysis of the March 2000 statement — including whether

the Orsinis had the requisite intent to deceive. Cadle asserts that the fact that the Orsinis repeated the misstatements demonstrates that they were not merely the result of a one-time mistake or oversight, but were intentional. However, of the three misstatements Cadle alleges, only one was repeated — the value of the residence. The valuations of the cash on hand at $25,000.00 and the stamps, coins, and jewelry at $20,000.00 were included for the first time on the March 2000 statement. Therefore, Cadle's argument has no force with respect to these assets. As to the residence, we disagree that the Orsinis' "pattern" of repeating the same value for the house should have affected the district court's consideration of whether the couple had any intent to deceive in reporting that value. First, the bankruptcy court did not interpret the allegedly inflated valuation as a mere mistake or oversight. Second, all of the reasons the court stated for finding a lack of intent would apply with equal force if the December 1999 statement had been considered. The Orsinis estimated the value of the residence at $250,000 because Rebecca had seen a comparable listing in the neighborhood before she prepared either statement. The court also accepted the Orsinis' explanation that the home had declined in value due to the billboards, dump, and deferred maintenance — all of which came about after the December 1999 statement was filed. Thus, the bankruptcy court's finding that the 1999 statement was not "in writing," although dubious, is inconsequential for purposes of this appeal.[2] We affirm the bankruptcy court's finding that the debt arising from the Orsinis' guarantee is dischargeable under 11 U.S.C. 523(a)(2)(B).

---

[2] We note that we question the circuit opinion on which the bankruptcy court relied in reaching this conclusion: Bellco First Federal Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997). In Kaspar, the Tenth Circuit held that "[a] written statement of financial condition does not mean an oral statement converted into an electronic format." Id. at 1362. Thus, a computer-generated form produced from a debtor's oral statements did not satisfy § 523(a)(2)(B). Id. Contrary to the reasoning in Kaspar, the text of § 523(a)(2)(B) does not explicitly state that a "writing" must be originally made on paper.

## B. Inadequate Records

Cadle also asserts that discharge was improper because the Orsinis did not comply with their duty to maintain and produce adequate records in accordance with 11 U.S.C. § 727(a)(3). Section 727(a)(3) allows the court to deny discharge if the debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." Id. The plaintiff bears the initial burden of proving that the debtor's financial records are inadequate and that this failure prevented the plaintiff from ascertaining the debtor's financial condition. Robertson v. Dennis (In re Dennis), 330 F.3d 696, 703 (5th Cir. 2003). Although a debtor's financial records need not contain full detail, there should be written evidence of the debtor's financial condition. Id. If the records are inadequate, the burden shifts to the debtors to show the inadequacy is justified under all of the circumstances. Id. A bankruptcy court has "wide discretion" in making these findings, which we review for clear error. Id.

Here, the bankruptcy court determined that the numerous documents produced by the Orsinis formed an adequate picture of the Orsinis' financial condition prior to their bankruptcy. We cannot say that this was clear error. First, as the district court noted, our ability to scrutinize this finding is complicated by the fact that many of the financial documents the Orsinis supplied to Cadle — including their tax returns and certain bank account statements — were not made a part of the record. Because Cadle bears the burden of proof, the absence of these documents undermines its claim.

Second, Cadle's heavy reliance on our unpublished opinion in Cadle Co. v. Terrell is unpersuasive. 46 F. App'x 731, 2002 WL 1973217 (5th Cir. July 30, 2002). In Terrell, the debtor failed to produce any credit card or bank

statements, and an expert witness testified that the available records were insufficient to understand the debtor's financial condition in the years preceding the bankruptcy. See No. 4:01-CV-0399, 2002 WL 22075, at *4-5 (N.D. Tex. Jan. 7, 2002). In contrast, the Orsinis produced three boxes of documents, including bank statements and credit card information, and later provided additional materials in response to Cadle's specific requests. Further, Cadle offered no testimony specifying which, if any, of the missing documents prevented it from ascertaining the Orsinis' financial condition.

Third, while the extent of a debtor's records should be commensurate with his or her financial sophistication, the bankruptcy court did not clearly err in finding that the Orsisnis were not so sophisticated as to require imposition of a higher-than-average standard of record keeping. Rebecca worked as a stockbroker for a period of time, but her degree was in elementary education. Prior to opening Foxglove, she had no experience running a business. Anthony has a degree in finance, but his employment had been primarily technical and computer-oriented. We affirm the bankruptcy court's finding that discharge should not be denied under 11 U.S.C. § 727(a)(3).

## C. Explanation of Loss

Finally, Cadle argues that the bankruptcy and district courts erred in concluding that the Orsinis were not subject to denial of discharge under 11 U.S.C. § 727(a)(5) because they failed to explain the loss in value to their jewelry and coin collection. Section 727(a)(5) provides, "The court shall grant the debtor a discharge unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." In this context,

> [t]he word "satisfactorily" . . . may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation — he believes what the bankrupts say with

9

reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented.

First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed), 700 F.2d 986, 993 (5th Cir. 1983).

The bankruptcy court concluded that "there was no loss of assets within the meaning of section 727(a)(5), and to the extent a loss could be said to have occurred, the Orsinis have satisfactorily explained the loss." Cadle argues that the Orsinis attributed $10,000 of the "other personal property" listed on their March 2000 statement to their jewelry and coin collection. Yet, on their bankruptcy schedules two and a half years later, the Orsinis reported the value of the coin collection as $325 and the value of the jewelry as $75. Cadle asserts that the Orsinis only explained the loss of a single piece of jewelry worth about $1000.00, and have thus failed to adequately explain the 95 percent decline in the value of these assets.

The bankruptcy court found, however, that the values listed in the financial statement were based on the fair market value of the assets, while the values in the bankruptcy schedules were liquidation values. Cadle has offered no evidence that any of the coins or jewelry, other than the piece of jewelry Rebecca acknowledges she lost, are missing. Like the district court, we are unwilling to reject the bankruptcy court's findings, premised upon its observations of the witnesses and the evidence at trial, based solely upon Cadle's skepticism about the reduction in value of these assets. We, therefore, affirm the bankruptcy court's finding that discharge should not be denied under 11 U.S.C. § 727(a)(5).

## III. CONCLUSION

For these reasons, the decisions of the bankruptcy and district courts permitting discharge of the Orsinis' debts are AFFIRMED.