# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2009

Charles R. Fulbruge III
Clerk

No. 07-41024

IN THE MATTER OF: JOHN CECIL DUNCAN

-------------------------------------------------------------------------------------

THE CADLE COMPANY

Appellant

v.

JOHN CECIL DUNCAN

Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:

In this bankruptcy adversary proceeding, the Cadle Company (Cadle) objected to the discharge of John Duncan (Duncan) on three separate grounds under 11 U.S.C. § 727(a), any one of which, if proven, would prevent discharge. The bankruptcy court denied Cadle relief and granted Duncan discharge of his debts, including Cadle's judgment in the amount of $420,102.50. The district court affirmed. Cadle appealed, arguing among other things that the

bankruptcy and district courts failed to correctly apply the presumption of Texas law in favor of community property. We affirm.

## I. FACTS AND PROCEEDINGS

Duncan is a general contractor who has built custom homes in the Dallas area for thirty years. He has been married to Barbara Duncan (Mrs. Duncan) since 1976. She is not a party to her husband's bankruptcy filing or to this adversary proceeding, in which an important issue is whether certain assets are community property or her separate property. When he filed for bankruptcy, Duncan omitted certain items from his assets, including oil and gas interests, rental property, and a boat. Initially, he also scheduled the family home (Briargrove) as his wife's separate property. Cadle objected, claiming that Duncan had not provided sufficient evidence that these assets were his wife's separate property rather than community property.

Duncan operated his business through a number of entities over the years, beginning in the 1980s with John C. Duncan, Inc. This company took out loans obtained by the FDIC and went out of business in 1987. The FDIC procured a deficiency judgment against Duncan individually for nearly $300,000, plus interest, in 1996. Cadle purchased this judgment in 2001, and began attempting to collect it in 2002, shortly before Duncan filed for Chapter 7 bankruptcy on December 4, 2002.

Duncan filed Bankruptcy Schedules A through J (the Schedules) and his Statement of Financial Affairs (SOFA) on December 23, 2002. The Schedules list Duncan's total assets at $440,979.00 and his liabilities at $592,367.27. Schedule E reports credit card debt of approximately $16,500, but no credit card statements were produced. At trial, Duncan testified that he discarded the statements each month after reconciling them. In response to questions on the SOFA, he denied making any transfers to insiders within a year of bankruptcy, even though he had transferred his interest in Briargrove and the stock of his

wholly owned entity Duncan & Sons, Inc. to Mrs. Duncan earlier that year. He also denied making any gifts during that year, even though at one point in the trial he characterized the stock transfer as a gift. Duncan also neglected to include an important financial statement provided to Horizon Bank in May 2002 that listed a net worth of over $1,200,000, testifying that (1) he forgot about it, and (2) he thought it was not important. His bankruptcy attorney testified at trial that she personally prepared the Schedules and the SOFA because she was familiar with Cadle's practice of aggressively pursuing debts. She listed the stock of Duncan & Sons, Inc. as belonging to Duncan, testifying that she did not see any evidence of a transfer.

In 1999 and 2002 Duncan had provided financial statements to banks in connection with his business loans. In a statement intended to reflect his financial condition as of October 28, 1999, he listed a net worth of over $1,000,000, including life insurance policies with a combined cash value of $750,000 and a 35-foot boat valued at $53,000. Duncan also listed $60,000 of income from his wife's trust. Only months before filing for bankruptcy, Duncan prepared a financial statement dated May 1, 2002, for Horizon Bank, reflecting a net worth of just over $1,200,000. This statement lists insurance of only $250,000 (but the schedule attached to the statement lists this amount as the face value with no cash surrender value). It also lists income from a trust attributed to Mrs. Duncan at $60,000, and all marketable securities as belonging to her alone. Duncan testified that the $500,000 life insurance policy was allowed to lapse because the premiums were too expensive. Duncan valued his interest in his two entities with his partner Linda Sanders at $2,072,500, with $1,406,500 in debt against it, as compared to the earlier statement, in which the debt equaled the value of his interest. Duncan testified at trial that the banks asked for the statements to reflect household finances. He also testified that the

values of the entities in the later statement reflected land values adjusted to include a 40% profit margin.

Cadle filed this adversary proceeding on June 17, 2003 seeking denial of Duncan's discharge, and its claim of $420,102.50 was allowed in full on February 9, 2004. Cadle prepared a list of documents that Duncan did not produce in the bankruptcy proceeding, including bank statements for any of his entities (except for Heritage Custom Homes, Inc., an entity he no longer used for business but whose checking account he still used for personal expenses), cancelled checks, check registers, deposit slips, credit card statements, credit card slips, etc. At trial, a Cadle employee testified that the company obtained some of the bank statements (including the financial statements) through subpoenas in the bankruptcy proceeding, but very little from Duncan despite discovery requests. Duncan did not obtain copies of cancelled checks from his bank, testifying that it would have cost at least $2,000. Based on this lack of information, Cadle claimed it was impossible to verify Duncan's claims that Mrs. Duncan owned many of the couple's assets as her separate property.

Duncan testified that Mrs. Duncan had substantial assets before their marriage. He also testified that she received property and cash when her parents died in 1979 and 1980, and an additional inheritance from her uncle. The Duncans testified that they maintained separate finances from the beginning of their marriage, and that they never had a joint bank account or credit card. They did not provide any documents verifying these inheritances.

The Duncans testified that Mrs. Duncan had borrowed money at various times over the years, pledging her separate assets as collateral, and then giving the money to Duncan for use in his business. On November 14, 1996 (about eleven months after the FDIC obtained its judgment), Duncan signed a promissory note in the principal amount of $188,709.39 payable to his wife with an effective date of May 13, 1996, a 4% interest rate, and a monthly payment of

4

$999.97. The Duncans also testified that this note consolidated various older notes for amounts Duncan had borrowed from Mrs. Duncan over the years to keep his business afloat. Both testified to having recently discovered the underlying notes, but Duncan did not produce them in discovery. He claimed to have paid the note from 1996 to 2002, but he admitted that he did not keep a ledger of payments made. The bank statements provided do not indicate any payments in the amounts called for in the note.

In 1996, on the advice of her accountant, Mrs. Duncan paid off the debt incurred by these transactions by cashing out various investments. In June or July 2002, again on the advice of her accountant, she and Duncan determined that Duncan could satisfy the 1996 note by transferring to her his interest in Briargrove, which he did. Duncan testified that the transfer was based on a written partition agreement, but no such agreement was ever produced. Mrs. Duncan reconveyed this interest back to Duncan after he filed for bankruptcy, testifying that she did not want it to appear that she was getting paid before other creditors. Duncan continued to reside at Briargrove and listed, among other expenses, the payment amount of their $3,000 mortgage as one of his expenses, which totaled over $7,000 a month. Mrs. Duncan testified that she paid the mortgage, with Duncan contributing as he was able.

On July 17, 2002, Duncan assigned to Mrs. Duncan all of his stock in Duncan & Sons, Inc., an entity Duncan had recently formed to continue his construction business, having ceased working with his former partner, Linda Sanders. Duncan testified this transfer was to collateralize a $23,000 loan she made to him in 2001 to pay taxes—and yet Duncan valued the stock as worthless on the Schedules—even though the couple's tax liability for that year was only $7,124. No promissory note for $23,000 is in the record. Duncan did produce a note dated November 1999 for $22,000, which Mrs. Duncan testified was for the payment of taxes. The couple's 1999 tax return was not produced, but the 2000

return in its two-year comparison listed the couple's 1999 tax liability at $24,143. Duncan never gave Mrs. Duncan the stock certificates, testifying that he could not find them.

After the trial in October 2004, the bankruptcy judge issued a memorandum opinion on March 31, 2006, rejecting Cadle's claims. The court found the testimony of Duncan and Mrs. Duncan to be credible and supported "in most respects" by the documentary evidence. According to the bankruptcy court, Mrs. Duncan owned the oil and gas interests, rental property, the boat, other vehicles, and most of the furnishings as her separate property. The district court affirmed in a short order. This appeal followed.

## II. DISCUSSION

We apply the same standard of review as the district court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Hickman v. Texas* (*In re Hickman*), 260 F.3d 400, 401 (5th Cir. 2001). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez* (*In re Perez*), 954 F.2d 1026, 1027 (5th Cir. 1992)). We give deference to the bankruptcy court's determinations of witness credibility. *Id.*

The bankruptcy code requires discharge of the debtor unless a statutory exception applies. 11 U.S.C. § 727(a). The exceptions are construed strictly against the creditor and liberally in favor of the debtor. *See Hudson v. Raggio & Raggio, Inc.* (*In re Hudson*), 107 F.3d 355, 356 (5th Cir. 1997). Cadle advances three separate subsections of § 727(a) as grounds for denying discharge to Duncan. First, Cadle argues that Duncan did not produce adequate records as required by § 727(a)(3). Second, Cadle argues that Duncan made false statements in his Schedules, in the SOFA, and in discovery, all in violation of § 727(a)(4). Finally, Cadle argues that Duncan transferred property—specifically

stock certificates and his interest in the family home—with the intent to defraud his creditors in violation of § 727(a)(2). We address each in turn, though in a different order from that presented by Cadle.

*A.     Section 727(a)(4)*

Section 727(a)(4) conditions the debtor's discharge on his truthfulness: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." To prevail on a claim under this subsection, an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence "that (1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Sholdra v. Chilmark Fin. LLP* (*In re Sholdra*), 249 F.3d 380, 382 (5th Cir. 2001) (citing *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992)). Circumstantial evidence may be used to prove fraudulent intent, *id.*, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent, *see id.* at 383.

False statements in the debtor's schedules or false statements by the debtor during the proceedings are sufficient to justify denial of discharge. *Beaubouef*, 966 F.2d at 178. Further, the materiality of an omission is not solely based on the value of the item omitted or whether it was detrimental to creditors. *Id.* Rather, the statement need only "bear[] a relationship to the bankrupt's business transactions or estate, or concern[] the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (quoting *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 617 (11th Cir. 1984)). Indeed,

> [t]he recalcitrant debtor may not escape a section 727(a)(4)(A) denial
> of discharge by asserting that the admittedly omitted or falsely

stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.

*Id.* (quoting *Chalik*, 748 F.2d at 618).

Under bankruptcy law, a creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor made false statements. Fed. R. Bankr. P. 4005 advisory committee's note.[1] If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense. *See First Tex. Savings Ass'n v. Reed* (*In re Reed*), 700 F.2d 986, 992 (5th Cir. 1983) ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case."); *see also Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir. 1987) ("[O]nce it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.") (internal quotation marks omitted).

In the bankruptcy court, Cadle argued that Duncan made numerous false statements in the Schedules and in the SOFA. The bankruptcy court sorted these arguments into five categories: (1) failure to list certain assets and ownership interests that Duncan claimed are his wife's separate property; (2) failure to value business ventures correctly or to identify their assets; (3) failure to include the stock transfer or the transfer of Briargrove in the SOFA, and related omissions; (4) failure to identify and report income; and (5) failure to disclose the May 2002 financial statement. These categories also reflect Cadle's arguments on appeal. The bankruptcy court analyzed these arguments and

---

[1] The objecting creditor also bears the ultimate burden of persuasion. Fed. R. Bankr. P. 4005.

found only one false statement: Duncan's failure to disclose in the SOFA the May 2002 financial statement. The court excused this omission by finding that Duncan honestly forgot to include it.

The bankruptcy court also concluded that certain items of the Duncans' property were separate in character, belonging to Mrs. Duncan, and thus were properly omitted from the Schedules and the SOFA. Specifically, the court found as a matter of fact that

> Ms. Duncan holds oil and gas interests as well as rental real property as her separate property. Ms. Duncan also owns a boat and other vehicles which are not community property. A large portion of the personal items located in their home belong to Ms. Duncan as her separate property. No evidence was introduced at trial to support Cadle's allegation that [Duncan] has any ownership interest in and/or right to such property.

Based on this and related findings, the court concluded that Duncan did not make any false statements in the Schedules or in the SOFA regarding these assets. In connection with this finding, the court did not address the presumption that arises under Texas law in favor of community property and the burden Duncan bore to overcome that presumption. *See* Tex. Fam. Code Ann. § 3.003; *see also McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973) (holding that property possessed during marriage is presumed community in character and a party must present clear and convincing evidence to prove otherwise).

Yet even if the bankruptcy court erred by failing to consider the Texas presumption in favor of community property in its § 727(a)(4) analysis and Duncan in fact made additional false statements, Cadle must prove that Duncan acted with fraudulent intent to prevail. This Cadle has not done. The bankruptcy court found that Duncan "dealt honestly with his creditors and . . . made a full and complete disclosure of all of his assets and liabilities," that he cooperated with Cadle in "its attempt to identify additional information," and

that he "did not possess any fraudulent intent." We cannot say, on this record, that these findings are clearly erroneous. Accordingly, we reject Cadle's § 727(a)(4) claim.

*B.      Section 727(a)(3)*

The second exception to discharge that Cadle raises in this appeal is § 727(a)(3), which reads as follows:

> (a) The court shall grant the debtor a discharge, unless –
>> . . . .
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Under this section, the creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor failed to keep adequate records and that the failure prevented the creditor from evaluating the debtor's financial condition. *Dennis*, 330 F.3d at 703; *see also Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 856 (Bankr. N.D. Tex. 2003) (noting that a creditor must establish two elements under 11 U.S.C. § 727(a)(3): "(1) that the debtor failed to keep or preserve books or records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition"). "A debtor's financial records need not contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *Dennis*, 330 F.3d at 703 (quoting *Goff v. Russell Co. (In re Goff)*, 495 F.2d 199, 201 (5th Cir. 1974)); *see also In re Juzwiak*, 89 F.3d at 428 ("[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." (citations omitted)); *Womble*, 289 B.R. at 856 ("Creditors are entitled to written evidence of the debtor's financial situation and past transactions; maintenance of such records is a

prerequisite to a discharge."). The adequacy of the debtor's records is determined on a case by case basis, using such considerations as the "debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Womble*, 289 B.R. at 856 (internal quotation marks omitted).

If the plaintiff satisfies this initial burden of production—that the debtor's failure to produce adequate records makes it impossible to discern his financial status—the debtor must prove the inadequacy is "justified under all the circumstances." *Dennis*, 330 F.3d at 703. The bankruptcy court has "wide discretion" in analyzing these shifting burdens, and its determination is reviewed for clear error. *Id.*

Cadle's central § 727(a)(3) argument on appeal raises similar community property issues to those discussed above, namely, that Duncan's failure to provide evidence of Mrs. Duncan's separate property made impossible Cadle's task of discerning the status of Duncan's financial affairs. Cadle did not, however, address this argument to the bankruptcy court, raising it for the first time on appeal to the district court, and we will not hear it. "It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316–17 (5th Cir. 2000). Cadle also argues that Duncan's failure to provide payee information from cancelled checks, credit card statements, and deposit slips. But the bankruptcy court found Duncan's disclosures adequate, noting that he provided personal and corporate tax returns, bank statements, formation documents for his most recent entities, his will, life insurance policy, and other documents. In light of the evidence, the bankruptcy court's finding that Duncan's disclosures sufficiently illuminated his financial affairs is not clearly erroneous. The bankruptcy court concluded that

Cadle failed to make a *prima facie* case under § 727(a)(3). We agree and reject Cadle's claim.[2]

*C.    Section 727(a)(2)*

The final exception to discharge that Cadle invokes is § 727(a)(2), which reads:

> (a) The court shall grant the debtor a discharge, unless –
>
>      . . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
>> (A) property of the debtor, within one year before the date of filing of the petition . . . .

To establish a claim under § 727(a)(2)(A), the plaintiff must prove the following four elements: "(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989). Constructive intent is inadequate; proof of actual intent is necessary, *see id.* at 91, which can be inferred from the debtor's actions and circumstantial evidence, *Perez*, 954 F.2d at 1029.

This circuit has adopted a six-factor test to evaluate evidence of actual intent to defraud under § 727(a)(2)(A):

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct

---

[2] In view of this conclusion, we do not address the bankruptcy court's alternative finding (and Cadle's arguments contesting the finding) that Duncan was justified in failing to provide documentation if he in fact did fail to provide that information.

after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Chastant*, 873 F.2d at 91 (quoting *In re Schmit*, 71 B.R. 587, 590 (Bankr. D. Minn. 1987)). A presumption of actual fraudulent intent arises if the debtor transfers property gratuitously or to a relative. *Id.* If the plaintiff can demonstrate either of these facts, then the burden shifts to the debtor to prove that he lacked fraudulent intent. *Id.* The presence or absence of fraudulent intent is a finding of fact, and is reviewed under the clearly erroneous standard. *Dennis*, 330 F.3d at 701.

Here, both the transfer of stock and the transfer of Briargrove to Mrs. Duncan were within one year of Duncan's bankruptcy petition, these transfers were to a relative, and were property of the debtor. The only remaining element is actual fraudulent intent.

First, Cadle asserts the transfer was without consideration, but the bankruptcy court found otherwise, stating that the transfers were to clear up outstanding debt. Second, Cadle is correct in asserting that Mrs. Duncan is a close relative of Duncan. Third, Duncan has retained beneficial use of Briargrove, though he may legitimately do so through his wife. *See IRS v. Petersen (In re Petersen)*, 312 B.R. 385, 392 (Bankr. N.D. Iowa 2004) (reasoning that ownership of property by spouse and the debtor's derivative rights may support a finding that fraudulent intent is absent). Fourth, Cadle argues Duncan lost tremendous value during the time of these transfers, as evidenced by a comparison of the May 2002 statement and the Schedules. Duncan claimed the value of the stock was negligible and his homestead interest in Briargrove was exempt. The bankruptcy court noted that these considerations weighed in favor of finding fraudulent intent but were not dispositive. Finally, combining the last two factors, Cadle asserts Duncan had a pattern of avoiding creditors,

13

but the bankruptcy court noted that Duncan was not intending to file for bankruptcy when he made the transfers, and he disclosed them on the Schedules.

The bankruptcy court weighed the evidence relating to these factors, looking "to the surrounding facts and circumstances, the credibility of [Duncan's] testimony, and the general chronology of events," and found that Duncan "did not have actual fraudulent intent "to hinder, delay or defraud his creditors" in transferring the stock and his interest in Briargrove. Viewing the record in light of the deferential standard of review, we cannot say this finding is clearly erroneous, and we reject Cadle's § 727(a)(2) claim.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.