In the

# United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 23, 2003**

Charles R. Fulbruge III
Clerk

m 02-30765

IN THE MATTER OF:

KELLY DENNIS,

Debtor.

SIDNEY ROBERTSON, III,

Appellant,

VERSUS

KELLY DENNIS
AND
GULF SOUTH TITLE CORPORATION,

Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, DENNIS, and CLEMENT,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Sidney Robertson sued Kelly Dennis,[1] his ex-wife and a chapter 7 debtor, in bankruptcy court over a debt of about $6,000. After a bench trial, the bankruptcy court entered judgment for Dennis and discharged her debts, including the debt owed to Robertson. The district court affirmed. Finding no clear error, we affirm.

I.

Though the marriage of Robertson and Dennis lasted for barely six years, the litigious aftermath has lasted for over a decade. The state court granted their divorce in 1992 and divided their personal property, with Dennis receiving approximately $8,200 more in value than did Robertson. The court also allowed Dennis to continue living in their marital home.

In 1997, Dennis married Clinton Smith, who eventually moved in with Dennis at the house she once had shared with Robertson. Shortly thereafter and perhaps not coincidentally, Robertson sought a revised property settlement in state court. Dennis did not appear, and the court entered a default judgment requiring her to pay Robertson monthly rent for use of the house, including accrued rent and interest from 1992.

Once they learned of this judgment, Dennis and Smith sold the house and bought their own. At about the same time, Robertson de-

manded that Dennis pay him roughly $63,000 to satisfy the judgment for her post-divorce use of the house. Within days, Dennis filed a petition for chapter 7 bankruptcy.

Robertson filed two adversary proceedings in bankruptcy court. First, he requested that the court lift the automatic stay so he could obtain, from escrow, the proceeds from the sale of the house. The court denied the request, and the district court affirmed.[2] Second, and the subject of this appeal, Robertson sought to deny Dennis a discharge under 11 U.S.C. § 727(a) or to make Dennis's debt to him non-dischargeable under 11 U.S.C. § 523-(a)(15). Against the approximately $63,000 in accrued rent and interest, the court recognized an offset of about $57,000 for Dennis's mortgage payments, repairs, and improvements. Thus, the court concluded that Robertson had a valid claim against Dennis for about $6,000, which estimate neither Robertson nor Dennis disputes.

After a two-day trial, the bankruptcy court entered judgment for Dennis. First, the court found that she lacked actual intent to defraud her creditors or the bankruptcy estate by transferring savings bonds to her son in the year preceding bankruptcy. The court therefore held that § 727(a)(2)(A) does not prevent her from receiving a discharge. Second, the court found that Dennis kept and filed adequate fi-

---

[1] Dennis has remarried and is now legally known as Kelly Smith. For the sake of clarity, and because she filed for bankruptcy under her maiden name, we refer to her as "Dennis."

[2] Robertson wanted not only his share of the sale proceeds, but also Dennis's share to compensate for the earlier unequal distribution of the personal property. Coincidentally, Dennis's share almost exactly made up for the $8,200 difference in the personal property distribution. Notwithstanding Robertson's vehement arguments to the contrary, this adversary proceeding is not a subject of the instant appeal.

nancial records. The court therefore held that § 727(a)(3) does not prevent a discharge. Third, the court found that Dennis could not pay the debt to Robertson and that a discharge would benefit her more than it would harm Robertson. The court therefore held that the debt is dischargeable under § 523(a)(15). The district court affirmed.

## II.

Robertson does not argue that the bankruptcy court misunderstood or misapplied the governing bankruptcy law, but only that the court clearly erred in its factual findings. "We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 225 (5th Cir. 1998). A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992) (quotation marks and citations omitted). "[W]e must give 'due regard . . . to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses.'" *Id.* (quoting FED. R. CIV. P. 52(a)). After a review of the record, we conclude that the court did not clearly err in any of its factual findings.

## A.

Robertson argues first that the bankruptcy court clearly erred by granting Dennis a discharge at all. In particular, he contends that the court should have denied Dennis a discharge under 11 U.S.C. § 727(a)(2)(A) for fraudulently transferring or concealing assets and under 11 U.S.C. § 727(a)(3) for failure to keep and file adequate financial records.

### 1.

Robertson reasons that the bankruptcy court clearly erred by finding that Dennis lacked actual intent to defraud under § 727-(a)(2)(A). He contends that her fraudulent intent is shown by her purchase of savings bonds for her son in the year preceding bankruptcy.

Section 727(a)(2)(A) entitles individual debtors to a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). The purpose of this section "is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate." *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989). Section 727(a)(2)(A) has four elements: "(1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor . . . ." *Id.* Dennis disputes only that she had actual intent to defraud.

"The finding of intent to hinder, delay, or defraud a creditor is a factual one which must be reviewed under the clear error standard." *Perez*, 954 F.2d at 1029 (citing *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552 (5th Cir. 1987)). As plaintiff, Robertson bore the burden to prove Dennis's intent to defraud. *Chastant*, 873 F.2d at 90-91. "Moreover, evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. Constructive intent is insufficient." *Id.* at 91 (quotation marks and internal citation omitted).

Given the obvious problems of proof,

though, "[a]ctual intent . . . may be inferred from the actions of the debtor and may be shown by circumstantial evidence." *Id.* We have identified several factors that tend to prove actual intent to defraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.*

Robertson leans heavily on the second factor, namely, Dennis's purchase of the bonds for her (and Robertson's) minor son. Robertson also notes that "a presumption of actual fraudulent intent to bar a discharge arises when property . . . is transferred to relatives." *Id.* (quoting *In re Butler*, 38 B.R. 884, 888 (Bankr. D. Kan. 1984)). He therefore contends that the purchase of the bonds creates a presumption of Dennis's actual intent to defraud, which she has not rebutted.

*Chastant*, however, is distinguishable from this case. Most important, the court in *Chastant* reviewed a finding of actual intent to defraud, whereas we review a finding that Dennis *lacked* actual intent. Next, Dennis, unlike the debtor in *Chastant*, offered evidence to rebut the presumption of actual intent. *Id.* at 91.

Finally, the *Chastant* debtor transferred far more valuable property than did Dennis. Though *Chastant*, *id.* at 90, does not specify the value of the property transferred, the debtor created an income trust fund from which he expected to live, so presumably the transfer was sizable. In contrast, the limited evidence in the record suggests that the bonds were worth $300; at the very most, they could have been worth about $1,200. Had Dennis actually intended to defraud her creditors, she surely would have transferred considerably more assets to her son. This is doubly true because she believed her debt to be $63,000, not $6,000, when she filed for bankruptcy

Moreover, the fourth factor of *Chastant* allows the court to weigh the minimal value of the transfer against the fact of transfer to a relative. A transfer of only a small amount of property likely would not materially affect "the financial condition of the [debtor] . . . before and after the transaction." Although a transfer to a relative might suggest intent, a minimal transfer just as strongly suggests a lack of intent. Other courts agree that "the low value of assets [is] one factor to be considered when determining whether the debtor had an intent to defraud," *Baker v. Mereshian (In re Mereshian)*, 200 B.R. 342, 346 (B.A.P. 9th Cir. 1996), as does *Collier on Bankruptcy*.[3]

Given the low value of the bonds, we conclude that the bankruptcy court did not clearly err by finding that Dennis lacked actual intent to defraud. Moreover, other factors from *Chastant* also support the court's finding: The record reveals no sinister or calculating pattern

---

[3] 6 COLLIER ON BANKRUPTCY ¶ 727.02[3][b], at 727-19-20 (L. King ed., 15th ed. 2003) ("The fact that the property transferred or concealed is of small value . . . tends to negate fraudulent intent.").

4

of transactions to place assets outside her bankruptcy estate, and the general chronology is similarly benign. Indeed, Dennis began to purchase the bonds months before she considered filing for bankruptcy, i.e., months before Robertson began to hector her for payment of the greatly exaggerated debt. In short, Dennis effectively rebutted the *Chastant* presumption, and Robertson did not prove that she intended to defraud her creditors by purchasing a few savings bonds for their son.[4]

2.

Robertson further contends that the bankruptcy court clearly erred by finding that Dennis kept and filed adequate financial records. Section 727(a)(3) entitles individual debtors to a discharge unless "the debtor has . . . failed to keep or preserve any recorded information . . . from which the debtor's financial condition . . . might be ascertained, unless such . . . failure . . . was justified under all the circumstances." 11 U.S.C. § 727(a)(3). As plaintiff, Robertson bore the initial burden to prove that Dennis failed to keep and preserve her financial records and that this failure prevented him from ascertaining her financial condition. *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 263 (Bankr. M.D. Fla. 2002); *Spiezio v. Vitek (In re Vitek)*, 271 B.R. 551, 558 (Bankr. S.D. Ohio 2001). A debtor's financial records need not contain "full detail," but "there should be written evidence" of the debtor's financial condition. *Goff v. Russell Co. (In re Goff)*,

495 F.2d 199, 201 (5th Cir. 1974).[5] If Robertson satisfied his burden, Dennis must prove that the inadequacy is "justified under all the circumstances." *Sadler*, 282 B.R. at 263; *Vitek*, 271 B.R. at 558. The bankruptcy court has "wide discretion" in both inquiries, *Goff*, 495 F.2d at 202, and its determination is a finding of fact reviewed for clear error, *id.* at 200.

The court did not clearly err by finding that Dennis kept and filed adequate records. Robertson failed his burden of proof: He never specifies which records are missing or why their absence prevented him from understanding Dennis's financial condition. He claims that Dennis filed no bank or payroll records, but the record contains numerous bank, payroll, and other records. Dennis also filed several income tax returns, the "quintessential documents" in a personal bankruptcy. *Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 833 (S.D.N.Y. 1993); *see also Lubman v. Hall (In re Hall)*, 174 B.R. 210, 215 (Bankr. E.D. Va. 1994). Notably, the chapter 7 trustee did not object to these submissions. In sum, Dennis is "an unsophisticated wage earner" who kept and filed records appropriate to her commonplace assets and liabilities. *Goff*, 495 F.2d at 201.

B.

Failing in his effort to deny Dennis a discharge altogether, Robertson argues that the bankruptcy court clearly erred by finding that Dennis's debt to him was dischargeable. A property settlement "incurred by the debtor in the course of a divorce" is non-dischargeable unless "the debtor does not have the ability to

---

[4] In addition, Robertson argues that Dennis betrayed her actual intent to defraud by omitting a small savings account and child support payments from her bankruptcy court financial statements. The bankruptcy court attributed this omission to a clerical oversight, not actual fraudulent intent. Robertson does not cite, and the record does not contain, any evidence to contradict this finding.

[5] *Goff*, 495 F.2d at 201 n.4, interprets an older version of § 727(a)(3), but that version is materially identical to the current § 727(a)(3).

pay such debt," or "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to . . . [the creditor] former spouse." 11 U.S.C. § 523(a)(15)(A)-(B).

Robertson and Dennis agree that the disputed debt is a property settlement incurred in the course of a divorce. They dispute only whether Dennis qualifies for an exception to the general rule of non-dischargeability. Dennis bears the burden to prove one of the exceptions. *Gamble*, 143 F.3d at 226. Though either exception would suffice, the bankruptcy court found that Dennis qualified for both. These determinations are findings of fact reviewed for clear error. *Id.*

The bankruptcy court did not clearly err by finding that Dennis "does not have the ability to pay" the debt to Robertson, in either a lump sum or periodic payments. 11 U.S.C. § 523-(a)(15)(A). Smith and Dennis had a combined income of about $100,000, which would seem to put them comfortably in the middle class. *Gamble*, 143 F.3d at 226 (noting that the court should consider income and assets of debtor's new spouse). Yet, they also had primary custody of three dependent children, and the court found that this gave them high but reasonable expenses. The court also found that their monthly income exceeded their monthly expenses by just a few dollars, based on Dennis's financial records and her testimony. Finally, the court found that Dennis would retain sizable debt, notwithstanding the discharge, because her student loans were non-dischargeable, and she had to reaffirm several other debts, e.g., mortgages and a car loan. These findings are not clearly erroneous, so neither is the court's conclusion that Dennis lacked the ability to

pay the debt to Robertson.[6]

## III.

Robertson also appeals the bankruptcy court's decision to quash a deposition subpoena to Smith because the subpoena did not come with a reasonable mileage allowance.[7] We review the decision to quash a subpoena for abuse of discretion, *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

"Service of a subpoena upon a person named therein shall be made by delivering a copy . . . and, if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law." FED. R. CIV. P. 45(b)(1).[8] "Although the correct reading of this portion of Rule 45[(b)(1)] is an issue of first impression for this court, it requires little comment." *CF&I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983).

The conjunctive form of the rule indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance. "[T]he plain meaning of Rule 45[(b)(1)] requires simultaneous tendering of witness fees and the reasonably estimated

---

[6] Because we uphold the decision that the debt was dischargeable under § 523(a)(15)(A), we need not address the alternative finding that it also was dischargeable under § 523(a)(15)(B).

[7] Robertson sent two subpoenas to Smith, but acknowledged the deficiency of the first and then sent the second subpoena at issue here.

[8] Rule 45(b)(1) applies to proceedings in the bankruptcy court. FED. R. BANKR. P. 9016. Until 1991, this part of the rule appeared in subsection (c).

mileage allowed by law with service of a sub-poena." *Id.* The courts uniformly agree with this interpretation of rule 45(b)(1), [9] as do the leading treatises on civil procedure.[10]

Accordingly, the subpoena was not properly served. A deposition witness is entitled to a statutory fee of forty dollars and a reasonable mileage allowance based on his mode and distance of transportation. 28 U.S.C. § 1821(b)-(c). Robertson tendered the forty-dollar fee with the subpoena but did not tender the mileage allowance. Yet, by tendering the fee, he implicitly acknowledged his concomitant duty to tender the mileage allowance. To be sure, the allowance would have been less than five dollars, because Smith lived just a few miles from the deposition site, but rule 45(b)(1) contains no *de minimis* exception.

Robertson's strongest argument may seem intuitively appealing: How can one know the mileage allowance in advance when one does not know the precise distance the witness must travel or even the mode of transportation he will use? In Robertson's view, *CF&I* might allow a recalcitrant witness to evade a subpoena through artful travel accounting. Rule 45(b)(1), however, does not require clairvoyance, but only "the *reasonably estimated* mileage allowed by law." *CF&I*, 713 F.2d at 496 (emphasis added).

Of course, even when a subpoena comes with an estimated mileage allowance, the witness may persuade the court that the estimate is unreasonable and therefore have the subpoena quashed. In this situation, however, we can determine whether the court abused its discretion based on factors such as the witness's distance from the deposition site, his common mode of travel, his expected mode of travel, the common mode of travel in the community, advance planning between the subpoenaing party and the witness, the expected length of the deposition, and so forth.[11] But when the subpoenaing party makes no attempt to calculate and tender at least a reasonably estimated mileage allowance, he plainly violates rule 45(b)(1) and leaves us with no factual basis from which to review the court's decision. Thus, a court does not abuse its discretion by quashing a subpoena where the subpoenaing party tendered no mileage allowance whatsoever with the subpoena.[12]

---

[9] *See, e.g.*, *Tedder v. Odel*, 890 F.2d 210 (9th Cir. 1989); *In re Stratosphere Corp. Secs. Litig.*, 183 F.R.D. 684 (D. Nev. 1999); *Alexander v. Jesuits of Mo. Province*, 175 F.R.D. 556 (D. Kan. 1997); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683 (D. Kan. 1995); *Coleman v. St. Vincent de Paul Soc'y*, 144 F.R.D. 92 (E.D. Wis. 1992); *Meyer v. Foti*, 720 F. Supp. 1234 (E.D. La. 1989); *Badman v. Stark*, 139 F.R.D. 601 (M.D. Pa. 1991).

[10] *See, e.g.*, 9 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.03[4][b][ii] (3d ed. 1997); 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2454, at 25-26 (2d ed. 1995).

[11] We do not suggest that this list is exclusive or that the courts always must consider every factor when ruling on a motion to quash. We merely observe that these factors could prove helpful in determining whether a subpoenaing party's estimate of the mileage allowance is reasonable.

[12] Though the dispute in this case involves just a few dollars, consider the more instructive example of a witness who travels by plane. The subpoenaing party may estimate the price of a ticket at $200, when the actual price turns out to be $400. In this example, the court is left with the factual questions of which amount is proper under
(continued...)

The judgment of the district court, affirming the bankruptcy court, is AFFIRMED.[13]

---

(...continued)

§ 1821(c)(1) and, if the subpoenaing party's estimate is incorrect, whether it nevertheless reasonably complies with rule 45(b)(1). These would be discretionary rulings, but the reviewing court could examine them easily enough for abuse of discretion.

[13] Robertson raises one final issue on appeal: that the bankruptcy court committed reversible error by instructing Smith, at trial, that he did not have to answer questions about his financial condition. Robertson contends that the court violated FED. R. EVID. 103(a)(2), which requires the proponent of excluded evidence to make an offer of proof to preserve an evidentiary ruling for appeal. We agree that Robertson's "position was adequately stated , and the record clearly is susceptible to proper appellate review." *Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1074 (5th Cir. 1982). Yet, Robertson devotes so much time to the molehill, i.e., how he preserved the ruling for appeal, that he completely neglects the mountain, i.e., why the ruling was incorrect. We therefore treat this issue as waived for failure to brief adequately. FED. R. APP. P. 28(a)(9)(A).