# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2012

Lyle W. Cayce
Clerk

No. 11-50391

In the Matter of:  THOMAS A. CIPOLLA,

Debtor

THOMAS A. CIPOLLA,

Appellant

v.

C. DANIEL ROBERTS, Trustee

Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:10-CV-00173

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50391

Appellant Thomas A. Cipolla ("Cipolla"), a Chapter 7 debtor, claimed a homestead exemption under Texas law. The Trustee objected to that exemption under 11 U.S.C. § 522(o). The bankruptcy court sustained the Trustee's objection, and the district court affirmed. Concluding that the bankruptcy court made an error of law, we vacate and remand.

## I. Facts & Proceedings

Cipolla graduated from law school in Texas in 1975 and obtained licenses to practice law in Texas and Missouri. He practices as an arbitrator and mediator in the area of labor and employment law and maintains offices in Dallas, Texas and St. Louis, Missouri.

In 1985, Cipolla acquired a partial interest in a residential property in St. Louis (the "Missouri Property"). In 1995, he acquired the remainder by gift from his parents. In October 1999, Cipolla contracted to buy a condominium on South Padre Island, Texas (the "Texas Property") for $100,000. He obtained a home equity loan of $76,000 in January 2000 by encumbering the previously unencumbered Missouri Property. On March 1, 2000, Cipolla used the $76,000 in loan proceeds, plus $24,000 in other funds, to purchase the Texas Property free of any encumbrances. Cipolla asserts that he encumbered the Missouri Property rather than the Texas Property because he obtained the loan from Commerce Bank in Missouri, with which he had a prior relationship, and that bank had no interest in securing its loan with a lien on the Texas Property.

Cipolla states that at the time he purchased the Texas Property, he intended it to be a recreational and long-term retirement property. In approximately March 2001, however, Cipolla decided to make the Texas Property his principal residence. He continued to maintain a home office at the Missouri Property, but he never again voted in Missouri or had a Missouri driver's license.

2

No. 11-50391

Over the next decade, Cipolla incurred considerable debt which eventually led him to file for bankruptcy and which remained outstanding at the time of filing. Cipolla had twice borrowed additional sums using the Missouri Property as collateral: $16,000 in March 2002, and another $56,000 in March 2005. Notably, the Texas Property remained unencumbered. Cipolla also amassed substantial unsecured debts from 2000 through 2009.

Cipolla filed for bankruptcy under Chapter 7 on May 7, 2009, and claimed the Texas Property in its entirety as exempt from his creditors under Texas's unlimited homestead exemption law.[1] Missouri, by contrast, currently limits the available homestead exemption to $15,000.[2] At the time Cipolla moved to Texas, Missouri limited the homestead exemption to $8,000.[3] Cipolla asserts that he had no knowledge of the Missouri or Texas homestead exemption laws when he moved to Texas.

Relying on 11 U.S.C. § 522(o), the Trustee objected to the exemption of the Texas Property to the extent that it was purchased with funds borrowed against the Missouri Property. Under § 522(o), a debtor cannot claim a homestead as exempt to the extent that the debtor's interest in that property is attributable to non-exempt property disposed of during the ten years preceding the bankruptcy filing "with the intent to hinder, delay, or defraud a creditor[.]" After an evidentiary hearing, the bankruptcy court sustained the Trustee's objection.

Cipolla timely appealed that ruling to the district court. Before the district court ruled on the appeal, however, Cipolla filed a motion in the bankruptcy

---

[1] TEX PROP. CODE § 41.001(a) ("A homestead [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.").

[2] MO. ANN. STAT. § 513.475.1.

[3] MO. LEGIS. SERV. H.B. 613 (July 11, 2003) (raising homestead exemption from eight thousand to fifteen thousand dollars).

3

No. 11-50391

court for relief from judgment under Fed. R. Civ. P. 60(b) on the ground that he had made a mistake in his testimony at the evidentiary hearing as to the year in which a lawsuit had been filed against him.  The bankruptcy court denied that motion.  Subsequently, the district court largely affirmed the bankruptcy court's original ruling, sustaining the Trustee's objection and denying the full homestead exemption claimed by Cipolla.  The district court did, however, reverse the bankruptcy court on two subsidiary issues: (1) an evidentiary presumption that the bankruptcy court had applied in the course of reaching its conclusion, and (2) the portion of the value of the Texas Property that should be considered non-exempt.  Cipolla timely appealed the district court's ruling.

## II.  Standard of Review

We review the bankruptcy court's ruling "under the same standards employed by the district court hearing the appeal from bankruptcy court; conclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo*."[4]  "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."[5]  In reviewing findings of fact, we must give "due regard" to the bankruptcy court's "opportunity to judge the witnesses' credibility."[6]

---

[4] *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir. 2000).

[5] *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696 (5th Cir. 2003).

[6] FED. R. CIV. P. 52(a)(6); *see also* FED. R. BANK. P. 8013 (same).

4

No. 11-50391

## III. Analysis

The party objecting to an exemption in bankruptcy has the burden of proving by a preponderance of the evidence that the exemption is improper.[7] Here, the bankruptcy court granted the Trustee's objection and denied Cipolla's homestead exemption to the extent that the value of his Texas homestead was attributable to funds borrowed against the Missouri Property. The relevant statute, 11 U.S.C. § 522(o), was added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005. Under § 522(o), the value of a homestead is not exempt to the extent that such value is attributable to non-exempt property that, "with the intent to hinder, delay, or defraud a creditor," the debtor disposed of within the ten years preceding the petition date.[8] This provision is intended to "strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions such as Texas" and to make clear that "abusive pre-bankruptcy planning will not be tolerated at the expense of creditors."[9]

In the instant case, none disputes that (1) within ten years before filing his bankruptcy petition, Cipolla "disposed of" (encumbered) part of his equity in the Missouri Property by obtaining a home equity loan of $76,000; (2) the bulk of the

---

[7] BANKRUPTCY RULE 4003(c) (burden of proof); 4 *Collier on Bankruptcy* ¶ 522.08[5][b] (citing *Grogan v. Garner*, 498 U.S. 279 (1991)) (preponderance of the evidence standard).

[8] 11 U.S.C. § 522(o) ("[T]he value of an interest in-- (1) real or personal property that the debtor. . . uses as a residence; . . . or (4) real or personal property that the debtor . . . claims as a homestead; shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.").

[9] *In re Fehmel*, No. 07–60831, 2008 WL 2151797, at *6 (Bkrtcy.W.D.Tex. May 22, 2008), *aff'd*, 372 Fed.Appx. 507, 2010 WL 1287618 (5th Cir. Apr. 5, 2010).

No. 11-50391

value of the Missouri Property is not exempt;[10] and (3) $76,000 of Cipolla's interest in the Texas Property is directly attributable to his "disposition" of the Missouri Property.[11] Cipolla claims that the bankruptcy court failed to clearly identify precisely when the transfer of value from his non-exempt asset to his exempt asset occurred, because he bought the Texas Property on March 1, 2000, but did not move to Texas and establish the Texas Property as an exempt homestead until mid-2001. It is true that this transfer of assets from exempt to non-exempt status did not occur all at once, but each of the relevant steps in that process took place within the ten years before Cipolla filed his bankruptcy petition. Thus, Cipolla disposed of a portion of a non-exempt asset, and transferred that value to property that was exempt as a homestead, within the contemplation of § 522(o).[12]

The only question, then, is whether, in disposing of non-exempt property, Cipolla acted "with the intent to hinder, delay, or defraud a creditor." That phrase is not defined, but it is used elsewhere in the Bankruptcy Code. Under

---

[10] The bankruptcy court focused on Missouri's $8,000 homestead exemption limit at the time Cipolla disposed of the Missouri Property, but § 522(o) instructs that whether the disposed-of property is exempt must be determined as of the petition date. *See* 11 U.S.C. § 522(o) (value of interest in claimed homestead "shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on *the date of the filing of the petition* with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt . . . *if on such date the debtor had held the property so disposed of.*") (emphasis added). By the time Cipolla filed for bankruptcy in 2009, Missouri's homestead exemption had been increased to $15,000. MO. ANN. STAT. § 513.475.1. The parties do not raise, and we do not address, whether and to what extent Missouri's $15,000 homestead exemption should affect the Trustee's recovery in this case.

[11] *Cf. Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 565-66 (7th Cir. 1989) (for purposes of § 727(a)(2), "transfer" includes taking out mortgage on property and applying those funds to exempt asset).

[12] *Id.* We express no view on whether a debtor's disposition of property falls under § 522(o) when only some of the steps in the process of that disposition took place within the ten years preceding the petition date.

No. 11-50391

§ 548(a)(1) of the Code, a trustee may avoid a transfer made within two years before the petition date if the debtor made the transfer "with actual intent to hinder, delay, or defraud" a past or future creditor.[13]  Likewise, under Code § 727(a)(2), a debtor who, *inter alia*, transfers or conceals property "with intent to hinder, delay, or defraud a creditor" within one year before the petition date may not receive a discharge.[14]  Given these similarities in language, courts have looked to decisions interpreting §§ 548(a)(1) and 727(a)(2) when interpreting § 522(o).[15]

We have set out several principles in the context of § 727(a)(2) that apply with equal force to § 522(o).  First, a finding of intent to hinder, delay, or defraud is a factual finding that is reviewed for clear error.[16]  Second, "evidence of actual intent to defraud creditors is required to support a finding of intent sufficient to deny a discharge.  Constructive intent is insufficient."[17]  Merely converting non-exempt assets to exempt assets within the look-back period is not fraudulent *per se*; additional evidence of intent to defraud is required.[18]  And, because direct

---

[13] 11 U.S.C. § 548(a)(1)(A).

[14] 11 U.S.C. § 727(a)(2).

[15] *See, e.g.*, *Addison v. Seaver (In re Addison)*, 540 F.3d 805, 811 (8th Cir. 2008) (collecting cases); *In re Sissom*, 366 B.R. 677, 692 (Bkrtcy.S.D.Tex. 2007) (same).

[16] *In re Dennis*, 330 F.3d at 701.

[17] *Id.* (quoting *Pave v. Chastant (Matter of Chastant),* 873 F.2d 89, 91 (5th Cir. 1989)).

[18] *See NCNB Texas Nat'l Bank v. Bowyer (Matter of Bowyer)*, 932 F.2d 1100, 1102 (5th Cir. 1991) (conversion of exempt to non-exempt assets is not inherently fraudulent, but it "may be relevant where other evidence proves actual intent to defraud creditors"); *Reed v. First Texas Savings Ass'n (Matter of Reed)*; 700 F.2d 986, 991 (5th Cir. 1983) (under § 727(a)(2), "mere conversion is not to be considered fraudulent unless other evidence proves actual intent to defraud creditors"); *see also* 4 *Collier on Bankruptcy* ¶ 522.08[5] (even after the 2005 passage of § 522(o), "Section 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the covered property.").

7

No. 11-50391

evidence of intent is usually unavailable, actual intent may be inferred from circumstantial evidence.[19]

For purposes of § 727(a)(2), we have looked to the following circumstantial evidence of intent to hinder, delay, or defraud:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.[20]

These factors are relevant to § 522(o) as well, but are not exclusive. Courts evaluating intent to defraud under § 522(o) have also looked to similar "badges of fraud" under state fraudulent conveyance laws.[21] In this case, the bankruptcy court properly looked to the non-exclusive indicia of fraud listed in the Texas Uniform Fraudulent Transfer Act ("TUFTA"):

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[19] *In re Dennis*, 330 F.3d at 701.

[20] *Id.* at 702 (quoting *Matter of Chastant,* 873 F.2d at 91).

[21] *In re Addison*, 540 F.3d at 811; *In re Sissom*, 366 B.R. at 692 (collecting cases).

8

No. 11-50391

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[22]

The bankruptcy court found that five of the TUFTA factors support a finding of intent to defraud. First, when Cipolla moved value from the mostly non-exempt Missouri Property to the exempt Texas Property, he transferred property to an insider—namely, himself. Second, Cipolla retained the use of the Missouri Property after transferring some of its equity to the Texas Property. Both of these findings are undisputed. Third, the bankruptcy court found that the transfer involved all or substantially all of the debtor's assets. Cipolla challenged this finding in the district court, but he does not do so on appeal to this court, so he waived any challenge to this finding.

The bankruptcy court also found two more badges of fraud to be applicable: (1) the transfer occurred shortly before the debtor incurred substantial debt; and (2) the debtor was sued or threatened with suit before the transfer. Additionally, the bankruptcy court found that "one factor present here that is not present in any other cases cited to the Court is that the Debtor is an attorney. . . . the Debtor is licensed in Missouri and Texas and is presumed to have knowledge of State homestead exemptions." The bankruptcy court concluded that, in light of all of these factors, Cipolla shifted his assets with an intent to defraud his creditors under § 522(o).

---

[22] TEX. BUS. & COMM. CODE § 24.005(b). Some courts have also looked to three additional factors for purposes of § 522(o): (1) whether the transfer was made just prior to the petition date; (2) whether the debtor is unable to explain the disappearance of assets; and (3) whether the debtor has engaged in a pattern of "sharp dealing" prior to filing for bankruptcy. *See, e.g.*, *In re Sissom*, 366 B.R. at 692-93. None of these additional factors is at issue here.

No. 11-50391

We agree with the district court that the bankruptcy court erred by holding that, being an attorney, Cipolla is "presumed to have knowledge of State homestead exemptions." There is simply no legal basis for applying such a broad, formal evidentiary presumption to this effect, even as to an attorney, like Cipolla, who is licensed to practice law in both Texas and Missouri and who passed the Texas bar examination. Although there is a general "presumption that the attorney in a bankruptcy matter is competent in that law and knows what his duties are according to the bankruptcy laws,"[23] Cipolla was not acting as a lawyer on his own behalf, and there is no evidence that he ever practiced in the field of bankruptcy. Thus, the bankruptcy court erred by applying a presumption that Cipolla had knowledge of the homestead exemption laws of Texas and Missouri.

Unlike the district court, we further hold that the bankruptcy court's error in this regard was not harmless.[24] An error is not harmless if the lower court may have come to a different conclusion had it applied the correct legal standard.[25] Here, the bankruptcy court apparently found Cipolla lacking in credibility, a determination to which we ordinarily defer.[26] Here, however, that determination could have been influenced by the court's presumption that as a licensed and practicing attorney in both states, Cipolla must have known about the states' homestead exemptions. Further, had the bankruptcy court made a

---

[23] *Gamez v. State Bar of Texas*, 765 S.W.2d 827, 834 (Tex.App.-San Antonio 1988, writ denied).

[24] *See Sigillito v. Hollander (In re Hollander)*, 438 Fed.Appx. 274, 278 (5th Cir. 2011) (holding that bankruptcy court's application of erroneous burden of proof was not harmless).

[25] *Id.*; *see also United States v. Woods*, 440 F.3d 255, 261 (5th Cir. 2006) (same, sentencing context).

[26] *Webb v. Reserve Life Ins. Co. (Matter of Webb)*, 954 F.2d 1102, 1104 (5th Cir. 1992) (citing FED. R. BANK. P. 8013) (clear error standard requires deference to credibility determinations).

No. 11-50391

more favorable evaluation of Cipolla's credibility in the absence of this erroneous presumption, it may have found that he did not have an intent to defraud his creditors within the meaning of § 522(o).

On the other hand, the bankruptcy court may have reached the very same conclusions as to Cipolla's credibility and, ultimately, his intent to defraud even if it had not made an erroneous presumption as to his knowledge. We do not address at this stage the bankruptcy court's factual conclusions that Cipolla lacked credibility generally, or that he acted with an intent to defraud his creditors. We simply hold narrowly that (1) the bankruptcy court erred by applying a presumption that Cipolla had knowledge of the state homestead exemptions because of his status as a licensed and practicing attorney in the relevant states, and (2) this case must be remanded to the bankruptcy court for adjudication without including that erroneous presumption in the matrix.

To aid in the efficient resolution of this matter, however, we shall also address Cipolla's additional arguments that raise questions of law regarding the two disputed badges of fraud. First, the bankruptcy court found that the transfer occurred shortly before Cipolla incurred substantial debt. Cipolla initially borrowed money against the Missouri Property in January 2000, bought the Texas Property in March 2000, and established it as his homestead in mid-2001. Over the course of the ensuing decade, through 2009, Cipolla incurred debts totaling hundreds of thousands of dollars. Cipolla contends that a gap of as much as nine years between the transfer and the incurring of debt is not a "short" period of time and does not suggest that he disposed of the Missouri Property with fraudulent intent.[27] We have not imposed strict time limits

---

[27] *See West v. Seiffert (In re Houston Drywall, Inc.)*, No. 05–95161–H4–7, 2008 WL 2754526, at *24 (Bkrtcy.S.D.Tex. July 10, 2008) (suggesting time limit of 90 days for non-insiders, and one year for insiders, by analogy to the look-back period for preferential transfers under 11 U.S.C. § 547).

regarding badges of fraud, however, instructing courts to look instead to the "general chronology" of the debtor's transactions.[28] Thus, the bankruptcy court did not err as a matter of law by considering the entire course of Cipolla's finances after he made the transfer at issue, although those debts which he incurred closer in time to the transfer are clearly more relevant to his intentions when the transfer took place than those which he incurred later. We take no position on whether, or to what extent, this factor should influence the bankruptcy court's ultimate factual finding as to Cipolla's intent to defraud, or lack thereof.

Second, the bankruptcy court found that Cipolla had been sued before the transfer. Cipolla testified at the evidentiary hearing that he was sued in approximately 1997 by an individual whose employment case he had arbitrated. Cipolla further testified that the suit was dismissed within six to eight months of his being served. Cipolla later filed a Rule 60(b) motion for relief from the judgment in which he indicated that he was actually sued in 2002, after the transfer had taken place. The bankruptcy court denied the Rule 60(b) motion, holding that even if Cipolla was not sued before the transfer, the other factors were sufficient to support a finding of an intent to defraud. Because Cipolla did not file a separate notice of appeal, the district court correctly refused to review the bankruptcy court's decision on the Rule 60(b) motion.[29]

---

[28] *In re Dennis*, 330 F.3d at 702 (quoting *Matter of Chastant,* 873 F.2d at 91). Other courts have taken an ad hoc approach to this question. *Compare Ingalls v. SMTC Corp. (In re SMTC Mfg. of Texas)*, 421 B.R. 251, 309 (Bkrtcy.W.D.Tex. 2009) (finding that this badge of fraud did not apply when transfer and incurring of debt were one year apart); *Havis v. AIG Sunamerica Life Ins. Co. (In re Bossart)*, No. 05–34015–H4–7, 2007 WL 4561300, at *14 (Bkrtcy.S.D.Tex. Dec. 21, 2007) (same, five-year gap) *with In re Presto*, 376 B.R. 554, 571 (Bkrtcy.S.D.Tex. 2007) (finding that this badge did apply when the gap was five months).

[29] *See Williams v. Chater*, 87 F.3d 702, 705 (5th Cir. 1996) ("where a Rule 60(b) motion is filed after the notice of appeal from the underlying judgment, a separate notice of appeal is required in order to preserve the denial of the Rule 60(b) motion for appellate review").

No. 11-50391

Irrespective of when Cipolla was sued, that quickly-dismissed suit should not, and evidently did not, have any significant influence on the bankruptcy court's decision, and it need not detain us further.  The bankruptcy court committed no legal error in this regard.  Again, we do not reach the question whether the bankruptcy court's ultimate factual findings were clearly erroneous, and nothing herein should be read as favoring or disfavoring those findings, to which we would owe deference.

## IV.  Conclusion

The bankruptcy court erroneously presumed that, because Cipolla is an attorney, he knew of the relevant state homestead exemptions.  This error was not harmless.  We therefore vacate the bankruptcy court's decision and remand this case to that court for further proceedings consistent with this opinion.  On remand, the bankruptcy court may choose to hold another evidentiary hearing, but we do not require as much and leave that to the court's sound discretion.

VACATED AND REMANDED.