# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2013

No. 13-50133
Summary Calendar

Lyle W. Cayce
Clerk

In the Matter of:  THOMAS A. CIPOLLA,

Debtor

_____

THOMAS A. CIPOLLA,

Appellant

v.

C. DANIEL ROBERTS, Trustee,

Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-791

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In Chapter 7 bankruptcy proceedings, Debtor Thomas A. Cipolla claimed a homestead exemption under Texas law.  The Trustee objected to the exemption

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50133

under 11 U.S.C. § 522(o). The bankruptcy court has twice sustained the Trustee's objection. The district court affirmed. We also affirm.

## I. Factual and Procedural Background

This is the second time that this case has been before this court. As the district court did, we repeat the factual summary given in the prior appeal:

> Cipolla graduated from law school in Texas in 1975 and obtained licenses to practice law in Texas and Missouri. He practices as an arbitrator and mediator in the area of labor and employment law and maintains offices in Dallas, Texas and St. Louis, Missouri.
>
> In 1985, Cipolla acquired a partial interest in a residential property in St. Louis (the "Missouri Property"). In 1995, he acquired the remainder by gift from his parents. In October 1999, Cipolla contracted to buy a condominium on South Padre Island, Texas (the "Texas Property") for $100,000. He obtained a home equity loan of $76,000 in January 2000 by encumbering the previously unencumbered Missouri Property. On March 1, 2000, Cipolla used the $76,000 in loan proceeds, plus $24,000 in other funds, to purchase the Texas Property free of any encumbrances. Cipolla asserts that he encumbered the Missouri Property rather than the Texas Property because he obtained the loan from Commerce Bank in Missouri, with which he had a prior relationship, and that bank had no interest in securing its loan with a lien on the Texas Property.
>
> Cipolla states that at the time he purchased the Texas Property, he intended it to be a recreational and long-term retirement property. In approximately March 2001, however, Cipolla decided to make the Texas Property his principal residence. He continued to maintain a home office at the Missouri Property, but he never again voted in Missouri or had a Missouri driver's license.
>
> Over the next decade, Cipolla incurred considerable debt which eventually led him to file for bankruptcy and which remained outstanding at the time of filing. Cipolla had twice borrowed additional sums using the Missouri Property as collateral: $16,000 in March 2002, and another $56,000 in March 2005. Notably, the Texas Property remained unencumbered. Cipolla also amassed substantial unsecured debts from 2000 through 2009.

2

No. 13-50133

Cipolla filed for bankruptcy under Chapter 7 on May 7, 2009, and claimed the Texas Property in its entirety as exempt from his creditors under Texas's unlimited homestead exemption law. Missouri, by contrast, currently limits the available homestead exemption to $15,000. At the time Cipolla moved to Texas, Missouri limited the homestead exemption to $8,000. Cipolla asserts that he had no knowledge of the Missouri or Texas homestead exemption laws when he moved to Texas.

Relying on 11 U.S.C. § 522(o), the Trustee objected to the exemption of the Texas Property to the extent that it was purchased with funds borrowed against the Missouri Property. Under § 522(o), a debtor cannot claim a homestead as exempt to the extent that the debtor's interest in that property is attributable to non-exempt property disposed of during the ten years preceding the bankruptcy filing "with the intent to hinder, delay, or defraud a creditor[.]" After an evidentiary hearing, the bankruptcy court sustained the Trustee's objection.

Cipolla timely appealed that ruling to the district court. Before the district court ruled on the appeal, however, Cipolla filed a motion in the bankruptcy court for relief from judgment under Fed. R. Civ. P. 60(b) on the ground that he had made a mistake in his testimony at the evidentiary hearing as to the year in which a lawsuit had been filed against him. The bankruptcy court denied that motion. Subsequently, the district court largely affirmed the bankruptcy court's original ruling, sustaining the Trustee's objection and denying the full homestead exemption claimed by Cipolla. The district court did, however, reverse the bankruptcy court on two subsidiary issues: (1) an evidentiary presumption that the bankruptcy court had applied in the course of reaching its conclusion, and (2) the portion of the value of the Texas Property that should be considered non-exempt. Cipolla timely appealed the district court's ruling.

*In re Cipolla* (*Cipolla I*), 476 F. App'x 301, 303-04 (5th Cir. 2012) (footnotes omitted). In that appeal, we held, *inter alia*, that the bankruptcy court erred by imputing knowledge of the homestead exemptions of Texas and Missouri to Cipolla because he is a lawyer. *Id.* at 308. We remanded the case for the bankruptcy court to reconsider the facts and evidence supporting its factual

findings without the presumption concerning Cipolla's knowledge as an attorney. *Id*. at 308-09.

On remand, the bankruptcy court again sustained the Trustee's § 522(o) objection to Cipolla's homestead exemption. The district court again affirmed the bankruptcy court, finding that it had "essentially nothing to review" because it had previously reviewed and affirmed the bankruptcy court's factual findings, and was constrained by the law of the case doctrine. In the alternative, the district court again reviewed and affirmed the bankruptcy court's findings on the merits. Cipolla timely appealed.

## II. Discussion

We review the decision of the bankruptcy court under the same standards applied by the district court hearing the appeal from the bankruptcy court; "conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Robertson v. Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (quotation omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

11 U.S.C. § 522(o) provides that the value of exempt property a debtor uses as a homestead "shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor. . . ." 11 U.S.C. § 522(o). We have previously set forth

several principles that govern review of a finding of intent to defraud under this section.

> First, a finding of intent to hinder, delay, or defraud is a factual finding that is reviewed for clear error. Second, evidence of actual intent to defraud creditors is required to support a finding of intent sufficient to deny a discharge. Constructive intent is insufficient. Merely converting non-exempt assets to exempt assets within the look-back period is not fraudulent per se; additional evidence of intent to defraud is required. And, because direct evidence of intent is usually unavailable, actual intent may be inferred from circumstantial evidence.

*Cipolla I*, 476 F. App'x at 306 (quotations and footnotes omitted). Among the circumstantial evidence of intent to defraud that a court may look to are the "badges of fraud" in state fraudulent conveyance laws, including the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *Id.* TUFTA lists eleven non-exclusive badges of fraud. *See* Tex. Bus. & Com. Code § 24.005(b). On remand, the bankruptcy court found that the following four were present in this case:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer was of substantially all the debtor's assets; and
>
> (4) the transfer occurred shortly before or shortly after a substantial debt was incurred.

"Not all, or even a majority, of the badges of fraud must exist to find actual fraud. Indeed, when several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)).

The bankruptcy court found that the four badges of fraud were sufficient to show that Cipolla acted with intent to defraud creditors. The bankruptcy court noted that Cipolla had converted his only significant non-exempt asset to exempt, by so doing had completely encumbered the non-exempt Missouri property, and had subsequently accrued over $300,000 in unsecured debt. In these circumstances, the bankruptcy court found that Cipolla acted with intent to defraud creditors as provided by § 522(o). On appeal, as he did in the district court, Cippola raises several challenges to the bankruptcy court's findings and analysis concerning the four applicable badges of fraud, and challenges the ultimate factual finding that he acted with intent to defraud.

Cipolla first asserts that the relevant transfer did not involve substantially all of his assets. *See* Tex. Bus. & Comm. Code § 24.005(b)(5). In his first appeal to this court, Cipolla waived this argument. *Cipolla I*, 476 F. App'x at 307-08. Thus, he may not resurrect that assertion here. *See Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 239-40 (5th Cir. 2012).

Cipolla next argues that he did not "transfer" property under the commonly understood definition of the term. To the extent that Cipolla raises this argument as a challenge to the applicability of § 522(o), it is foreclosed by the law of the case doctrine. "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Section 522(o) does not use the term "transfer," but rather focuses on the "dispos[al]" of property. 11 U.S.C. § 522(o). *Cipolla I* resolved this issue when it held that:

> It is true that this transfer of assets . . . did not occur all at once, but each of the relevant steps in that process took place within the ten years before Cipolla filed his bankruptcy petition. Thus, Cipolla disposed of a portion of a non-exempt asset, and transferred that

value to property that was exempt as a homestead, within the contemplation of § 522(o).

*Cipolla I*, 476 F. App'x at 306.  To the extent that Cipolla raises this issue as a challenge to the applicability of TUFTA, he has apparently waived it by not raising it in the first appeal.  *See Lindquist*, 669 F.3d at 239-40.  Even if not waived, this argument fails.  The definition of "transfer"in TUFTA is broad, providing that it covers "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with as asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien of other encumbrance."  Tex. Bus. & Comm. Code § 24.002(12). The text of this definition encompasses the action that Cipolla took here: creating a lien on the Missouri property to obtain a loan, which he used to purchase the Texas property.

Cipolla next asserts that the length of time the bankruptcy court used to determine whether he incurred substantial debt "shortly" after the transfer was too long.  *See* Tex. Bus. & Comm. Code § 24.005(b)(10).  His argument that the court erred as a matter of law is foreclosed by the law of the case doctrine.  *See Castillo*, 179 F.3d at 326.  *Cipolla I* specifically held that "the bankruptcy court did not err as a matter of law by considering the entire course of Cipolla's finances after he made the transfer at issue, although those debts which he incurred closer in time to the transfer are clearly more relevant to his intentions when the transfer took place than those which he incurred later." *Cipolla I*, 476 F. App'x at 309.  To the extent Cipolla argues that the bankruptcy court erred in its factual findings, in reexamining the evidence on remand, the bankruptcy court clearly referenced *Cipolla I*'s direction as to the relative weight to be given to earlier and later incurred debts, and again found substantial debt incurred shortly after the purchase of the Texas property.  As the district court noted, a significant portion of the total §300,000 was in fact incurred close in time to the

No. 13-50133

Texas property purchase, including $16,000 borrowed against the Missouri home in 2002, a Wells Fargo business line of credit for $105,000 taken out in 2001 or 2002, and a Bank of America credit card with $33,000 debt incurred in 2003 or 2004. Further, the uncertainty about when each specific debt was incurred appears to be a result of the debtor's inability to provide specific records. On the record as a whole, we find no clear error in these factual findings.

Next, Cipolla contends that the finding that as a lawyer, he was presumed to be aware of the homestead exemptions allowed by Texas and Missouri, is a "bell that cannot be unrung," which somehow continued to infect the bankruptcy court's findings. There is no support for this argument. Both courts clearly stated and applied this court's holding that Cipolla's status as an attorney was an improper factor for consideration.

Cipolla also argues, somewhat inexplicably, that the bankruptcy court improperly considered "demeanor" in judging his credibility. The district court's reference to demeanor was not improper, and was simply a recognition of the fact that the bankruptcy court had heard Cipolla's testimony, judged his credibility, and weighed it along with the other evidence. We will not disturb the bankruptcy court's credibility determinations on appeal. *See, e.g., Dunbar Med. Sys., Inc. v. Gammex Inc.*, 216 F.3d 441, 453 (5th Cir. 2000); Fed. R. Civ. P. 52(a)(6).

Cipolla's remaining argument that the bankruptcy court erred in its ultimate finding that he acted with actual intent to defraud creditors essentially asks this court to reweigh all the evidence and decide that his version of events, including his own account of his subjective motivations, is more plausible than the evidence judged by the bankruptcy court to be indicative of intent to defraud. However, that is not the function of an appellate court reviewing findings of fact. *See Anderson*, 470 U.S. at 573-74. On this record, which has now been reviewed twice each by the bankruptcy court, the district court, and this court, the

8

evidence supports the findings that four TUFTA badges of fraud apply, and that there is sufficient circumstantial evidence supporting the bankruptcy court's ultimate finding that Cipolla acted with intent to defraud under § 522(o).

### III. Conclusion

For the foregoing reasons, we AFFIRM.